___ FILED        ___ RECEIVED
___ ENTERED      ___ SERVED ON
            COUNSEL/PARTIES OF RECORD

        SEP 1 7 2014

    CLERK US DISTRICT COURT
      DISTRICT OF NEVADA
BY:_____ DEPUTY

Daniel G. Bogden
United States Attorney
Steven W. Myhre
First Assistant United States Attorney
Daniel R. Schiess
Assistant United States Attorney
333 Las Vegas Boulevard, Suite 5000
Las Vegas, Nevada 89101
(702)388-6336

Attorneys for Plaintiff, United States of America

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>      v.<br><br>CONSTANCE C. FENTON,<br><br>            Defendant. | 12-cr-400-JAD-GWF<br><br>Plea Agreement |

The United States, by and through Daniel G. Bogden, United States Attorney, and Steven W. Myhre, First Assistant United States Attorney, and Daniel R. Schiess, Assistant United States Attorney, the defendant, Constance C. Fenton, and her attorney, Michael R. Pandullo, submit this Plea Agreement under Fed. R. Crim. P. 11(c)(1)(A) and (B).

## I.    SCOPE OF AGREEMENT

The parties to this Plea Agreement are the United States of America and Constance C. Fenton. This Plea Agreement binds the defendant and the United States Attorney's Office for the District of Nevada. It does not bind any other prosecuting, administrative, or regulatory authority, the United States Probation

1   Office, or the Court.

2       The Plea Agreement sets forth the parties' agreement regarding criminal

3   charges referenced in the Plea Agreement and applicable sentences, fines,

4   restitution and forfeiture.  It does not control or prohibit the United States or any

5   agency or third party from seeking any other civil or administrative remedies

6   directly or indirectly against the defendant.

7   **II.   DISPOSITION OF CHARGES AND WAIVER OF TRIAL RIGHTS**

8       A.   <u>Guilty Plea</u>.  The defendant knowingly and voluntarily agrees to plead

9   guilty to Count Nine of the Indictment filed October 24, 2012, conspiracy to commit

10  money laundering in violation of 18 U.S.C. § 1956(h).

11      B.   <u>Waiver of Trial Rights</u>.  The defendant acknowledges that she has

12  been advised and understands that by entering a plea of guilty she is waiving --

13  that is, giving up -- certain rights guaranteed to all defendants by the laws and the

14  Constitution of the United States.  Specifically, the defendant is giving up:

15      1.   The right to proceed to trial by jury on all charges, or to a trial

16  by a judge if the defendant and the United States both agree;

17      2.   The right to confront the witnesses against the defendant at

18  such a trial, and to cross examine them;

19      3.   The right to remain silent at such a trial, with assurance that

20  her silence could not be used against her in any way;

21      4.   The right to testify in her own defense at such a trial if she so

22  chooses;

23      5.   The right to compel witnesses to appear at such a trial and

1    testify in the defendant's behalf; and

2              6.    The right to have the assistance of an attorney at all stages of

3    such proceedings.

4         C.    Withdrawal of Guilty Plea.  The defendant will not seek to withdraw

5    her guilty plea after she has entered it in court.

6         D.    Additional Charges.   The United States agrees not to bring any

7    additional charges against the defendant arising out of the investigation in the

8    District of Nevada which culminated in this Plea Agreement and based on conduct

9    known to the United States, except that the United States reserves the right to

10   prosecute the defendant for any crime of violence as defined by 18 U.S.C. § 16.

11   III.    ELEMENTS OF THE OFFENSE

12        Count 9: The elements of Conspiracy to Commit Money Laundering in

13   violation of Title 18, United States Code, Section 1956(h) are as follows:

14        1.    Beginning in or around September 2002 and continuing to on or about

15   October 2012, there was an agreement between two or more persons to commit the

16   offense of money laundering in violation of Title 18, United States Code, Section

17   1956(a)(1)(B)(i), as charged in the indictment; and

18        2.    The defendant became a member of the conspiracy, knowing of at

19   least one of its objects and intending to help accomplish it.

20        The elements of Money Laundering in violation of Title 18 United States

21   Code, Section 1956(a)(1)(B)(i) are as follows:

22        1.    The defendant conducted or intended to conduct a financial

23   transaction involving property that represented the proceeds of wire fraud or

1    securities fraud;

2        2.    The defendant knew that the property represented the proceeds of

3    wire fraud or securities fraud;

4        3.    The defendant knew that the transaction was designed in whole or in

5    part to conceal or disguise the nature, the location, the source, the ownership or

6    control of the proceeds of wire fraud or securities fraud.

7    **IV.    FACTS SUPPORTING GUILTY PLEA**

8        A.    The defendant will plead guilty because she is, in fact and under the

9    law, guilty of the crime charged.

10       B.    The defendant acknowledges that if she elected to go to trial instead of

11   pleading guilty, the United States could prove her guilt beyond a reasonable doubt

12   and establish its right to the forfeiture money judgment.  The defendant further

13   acknowledges that her admissions and declarations of fact set forth below satisfy

14   every element of the charged offense.

15       C.    The defendant waives any potential future claim that the facts she

16   admitted in this Plea Agreement were insufficient to satisfy the elements of the

17   charged offense.

18       D.    The defendant admits and declares under penalty of perjury that the

19   facts set forth below are true and correct:

20       1.    From in or about September 2002 to in or about October 2012,

21   defendant Thomas Cecrle and others devised and executed a scheme to defraud

22   and to obtain money and property by means of false and fraudulent pretenses,

23   representations, half-truths, and promises.

4

2.    The objective of the scheme and artifice was to fraudulently induce victims to invest money in fake investment programs, including non-existent water rights.   Throughout the course and duration of the water rights investment scheme, defendant Cecrle and others induced victims to invest money by using interstate wire communications and communication facilities to knowingly make false representations about the nature of the water rights investment and to fraudulently lull investors into a false sense of security about the investment.

3.    To conceal and disguise the nature, location, source, ownership and control of the proceeds of the fraudulent water rights investment, defendant Cecrle, and others, caused victims of the fraud to deposit money into bank accounts held in the name of others, thereafter withdrawing, or causing the withdrawal, of the money so Cecrle and others could convert the proceeds to their own use.

4.    Beginning in or around March 2006 and through at least April 2008, defendants Cecrle and Fenton agreed that Fenton would direct defrauded investors to deposit their money into bank accounts that Fenton owned and controlled, including a Wells Fargo account held in the name of First Security Investments and a Bank of America account held in the name of CTF Holdings. After directing deposits into these accounts, defendant Fenton agreed to subsequently make, or cause to be made, numerous monetary transactions, including intra-bank transfers, bank counter withdrawals, Western Union and other interstate wire transfers, and ATM withdrawals. These transactions in fact concealed and disguised the true source, nature and location of the proceeds.

5.     From at least April 2008 to October 2012, defendant Fenton agreed with defendant Cecrle and others to direct defrauded investors to deposit cash into accounts owned and controlled by others, including defendant Ashlee Martin, knowing that defendant Cecrle and others would conduct further monetary transactions.  These transactions in fact concealed and disguised the true source, nature and location of the proceeds.

6.     The deposits into defendant Fenton's accounts and into those of others were, in fact, comprised of proceeds from the wire and securities fraud scheme described above.  From in and around March 2006 to October 2012, defendant Fenton agreed with defendant Cecrle to engage in monetary transactions that involved the fraudulent proceeds, including the transactions charged at Counts Twelve through Twenty of the Indictment.

7.     At all relevant times in connection with these monetary transactions, defendant Fenton knew, among other things, that: (1) defendants Cecrle and Fenton solicited money from investors in odd amounts and at non-scheduled odd times; (2) defendants Fenton and Cecrle frequently engaged in commercially unusual and unreasonable transactions in connection with the water rights investment; (3) defendant Cecrle repeatedly promised investors that the water rights investment would fund, or payout, shortly after investors paid money into it; (4) the water rights investment never funded as repeatedly promised by Cecrle; (5) despite the failed promises, defendants Cecrle and Fenton continued to solicit money from potential investors in commercially unreasonable and unusual ways; (6) in June 2009, federal law enforcement agents executed a search warrant

on defendant Fenton's residence and informed her that they were investigating criminal allegations of fraud in connection with the water rights investment program; (7) following the search warrant, defendant Fenton did not consult with an impartial attorney, seek advice from others not connected with the water rights investment, or conduct any investigation of her own into allegations of fraud; and (8) despite her knowledge of the federal law enforcement investigation, despite Cecrle's repeated and frequent failed promises of payment, despite the commercially unusual and unreasonable nature of the transactions, and despite her own lack of investigation, defendant Fenton continued to solicit money from investors for the water rights investment program.

8.   Based on her knowledge of the circumstances surrounding them, defendant Fenton knew there was a high probability that deposits into her accounts, and into those of others made at her direction, were the result of unlawful activity.   Despite knowing this, she deliberately avoided learning the truth about the wire and securities fraud schemes described above, the proceeds resulting from the fraud, or that the transactions were designed to conceal or disguise the true source, nature and ownership of the proceeds.

## V.   COLLATERAL USE OF FACTUAL ADMISSIONS

The facts set forth in Section IV of this Plea Agreement shall be admissible against the defendant under Fed. R. Evid. 801(d)(2)(A) at sentencing for any purpose.  If the defendant does not plead guilty or withdraws her guilty pleas, the facts set forth in Section IV of this Plea Agreement shall be admissible at any proceeding, including a trial, for impeaching or rebutting any evidence, argument

1  or representation offered by or on the defendant's behalf.  The defendant expressly

2  waives all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 regarding the

3  use of the facts set forth in Section IV of this Plea Agreement.

4  **VI.   APPLICATION OF SENTENCING GUIDELINES PROVISIONS**

5  A.   <u>Discretionary Nature of Sentencing Guidelines</u>.   The defendant

6  acknowledges that the Court must consider the United States Sentencing

7  Guidelines ("USSG" or "Sentencing Guidelines") in determining the defendant's

8  sentence, but that the Sentencing Guidelines are advisory, not mandatory, and the

9  Court has discretion to impose any reasonable sentence up to the maximum term

10  of imprisonment permitted by statute.

11  B.   <u>Offense Level Calculations</u>.   The parties stipulate to the following

12  calculation of the defendant's offense level under the Sentencing Guidelines,

13  acknowledge that these stipulations do not bind the Court, and agree that they will

14  not seek to apply any other specific offense characteristics, enhancements or

15  reductions:

16       Base Offense Level (USSG § 2B1.1(a)(1)):   7

17       Loss Amount: $120,000-$200,000
     (USSG § 2B1.1(b)(1)(G)):     10

18       (USSG § 3E1.1(a),(b)):     <u>(3)</u>

19       Total     <u>14</u>

20  The defendant acknowledges that the statutory maximum sentence and any

21  statutory minimum sentence limit the Court's discretion in determining the

22  defendant's sentence notwithstanding any applicable Sentencing Guidelines

23  provisions.

1   C.   Reduction of Offense Level for Acceptance of Responsibility.  Under

2   USSG § 3E1.1(a), the United States will recommend that the defendant receive a

3   two-level downward adjustment for acceptance of responsibility unless she (a) fails

4   to truthfully admit facts establishing a factual basis for the guilty plea when she

5   enters the plea; (b) fails to truthfully admit facts establishing the amount of

6   restitution owed when she enters her guilty plea; (c) fails to truthfully admit facts

7   establishing the forfeiture allegations when she enters her guilty plea; (d) provides

8   false or misleading information to the United States, the Court, Pretrial Services,

9   or the Probation Office; (e) denies involvement in the offense or provides conflicting

10   statements regarding her involvement or falsely denies or frivolously contests

11   conduct relevant to the offense; (f) attempts to withdraw her guilty plea; (g)

12   commits or attempts to commit any crime; (h) fails to appear in court; or (i) violates

13   the conditions of pretrial release.

14   Under USSG §3E1.1(b), the United States will move for an additional one-

15   level downward adjustment for acceptance of responsibility before sentencing

16   because the defendant communicated her decision to plead guilty in a timely

17   manner that enabled the United States to avoid preparing for trial and to

18   efficiently allocate its resources.

19   These Sentencing Guidelines provisions, if applied, will result in a total

20   offense level of 14, as stated above.

21   D.   Criminal History Category.  The defendant acknowledges that the

22   Court may base her sentence in part on her criminal record or criminal history.

23   The Court will determine the defendant's Criminal History Category under the

9

Sentencing Guidelines.

E.   <u>Relevant Conduct</u>.   The Court may consider all relevant conduct, whether charged or uncharged, in determining the applicable Sentencing Guidelines range and whether to depart from that range.

F.   <u>Additional Sentencing Information</u>.   The stipulated Sentencing Guidelines calculations are based on information now known to the parties.   The parties may provide additional information to the United States Probation Office and the Court regarding the nature, scope, and extent of the defendant's criminal conduct and any aggravating or mitigating facts or circumstances. Good faith efforts to provide truthful information or to correct factual misstatements shall not be grounds for the defendant to withdraw her guilty plea.

The defendant acknowledges that the United States Probation Office may calculate the Sentencing Guidelines differently and may rely on additional information it obtains through its investigation.   The defendant also acknowledges that the Court may rely on this and other additional information as it calculates the Sentencing Guidelines range and makes other sentencing determinations, and the Court's reliance on such information shall not be grounds for the defendant to withdraw her guilty plea.

**VII.   APPLICATION OF SENTENCING STATUTES**

A.   <u>Maximum Penalty</u>.   The maximum penalty for conspiracy under 18 U.S.C. § 1349 is a 20-year prison sentence, a fine of $250,000, or both.

B.   <u>Factors Under 18 U.S.C. § 3553</u>. The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining the defendants sentence.   However,

1    the statutory maximum sentence and any statutory minimum sentence limit the

2    Court's discretion in determining the defendant's sentence.

3        C.    Parole Abolished.    The defendant acknowledges that her prison

4    sentence cannot be shortened by early release on parole because parole has been

5    abolished.

6        D.    Supervised Release.    In addition to imprisonment and a fine, the

7    defendant will be subject to a term of supervised release not greater than ~~five~~ *three*

8    years.  18 U.S.C. § 3583(b)(1). Supervised release is a period of time after release

9    from prison during which the defendant will be subject to various restrictions and

10   requirements.  If the defendant violates any condition of supervised release, the

11   Court may order the defendant's return to prison for all or part of the term of

12   supervised release, which could result in the defendant serving a total term of

13   imprisonment greater than the statutory maximum prison sentence of 20 years.

14       E.    Special Assessment.    The defendant will pay a $100 special

15   assessment per count at the time of sentencing.

16   **VIII.  POSITIONS REGARDING SENTENCE**

17       The United States will recommend that the defendant be sentenced to the

18   low end of the applicable Sentencing Guidelines range as determined by the Court

19   unless the defendant commits any act that could result in a loss of the downward

20   adjustment for acceptance of responsibility.  The defendant acknowledges that the

21   Court does not have to follow that recommendation.   The defendant also

22   acknowledges that the Court does not have to grant a downward departure based

23   on the defendant's substantial assistance to the United States, even if the United

1   States chooses to file a motion pursuant to 18 U.S.C. § 3553(e)(1), USSG § 5K1.1,

2   or Fed. R. Crim. P. 35.  This Plea Agreement does not require the United States to

3   file any pre- or post-sentence downward departure motion under USSG §5K1.1 or

4   Fed. R. Crim. P. 35.  Notwithstanding the agreement to recommend a sentence

5   within the applicable range, the United States reserves its right to defend any

6   lawfully imposed sentence on appeal or in any post-conviction litigation.

7        The defendant may request a sentence below the Sentencing Guidelines

8   range as calculated in this Plea Agreement pursuant to 18 U.S.C. § 3553 from any

9   sentence the Court may impose, and the United States may oppose it.

10  **IX.    RESTITUTION**

11       The defendant acknowledges that restitution is mandatory for the offense of

12  Conspiracy to Commit Money laundering and agrees to pay restitution to any

13  identifiable victims in an amount as determined by the Court at the time of

14  sentencing.   The defendant cannot discharge her restitution obligation through

15  bankruptcy proceedings.  The defendant acknowledges that restitution payments

16  and obligations cannot offset or reduce the amount of any forfeiture judgment

17  imposed in this case.

18  **X.     FORFEITURE**

19       The government agrees not to seek forfeiture against the defendant for any

20  offenses arising out of the investigation that led to the instant plea provided all

21  other terms and conditions of this agreement remain in force.

22

23

## XI.   FINANCIAL INFORMATION AND DISPOSITION OF ASSETS

Before or after sentencing, upon request by the Court, the United States, or the Probation Office, the defendant will provide accurate and complete financial information, submit sworn statements, and/or give depositions under oath concerning her assets and her ability to pay.  The defendant will surrender assets she obtained directly or indirectly as a result of her crimes, and will release funds and property under her control in order to pay any fine or restitution ordered by the Court.

## XII.   COOPERATION

The defendant agrees, if requested by the United States, to provide complete and truthful information and testimony concerning the defendant's knowledge of all other persons who are committing or have committed offenses against the United States or any state, and agrees to cooperate fully with the United States and any state and local agencies in the investigation and prosecution of such persons.  The defendant agrees that the information provided can be used against the defendant to establish relevant conduct for sentencing purposes.

In the event the United States Attorney decides in the sole discretion of the United States Attorney that the assistance provided by the defendant amounts to "substantial assistance" pursuant to USSG § 5K1.1, the United States will timely file a motion for downward departure from the applicable Guideline calculation. The Court has the sole discretion to grant such a motion.

The defendant agrees that a motion for downward departure based on substantial assistance shall not be made under any circumstances unless the

1  defendant's cooperation is deemed to be substantial assistance by the United

2  States Attorney.  The United States has made no promise, implied or otherwise,

3  that the defendant will be granted a departure for substantial assistance.  Further,

4  no promise has been made that such a motion will be made even if the defendant

5  complies with the terms of this Plea Agreement in all respects but has been unable

6  to provide substantial assistance as determined in the sole discretion of the United

7  States Attorney.

8      The United States agrees to consider the totality of the circumstances,

9  including but not limited to, the following factors, in determining whether, in the

10  sole discretion of the United States Attorney, the defendant has provided

11  substantial assistance which would merit a motion by the United States for a

12  downward departure from the applicable Guideline:

13      A.    The United States' evaluation of the significance and usefulness of the

14  defendant's assistance;

15      B.    The truthfulness, completeness, and reliability of any information or

16  testimony provided by the defendant;

17      C.    The nature and extent of the defendant's assistance;

18      D.    Any injury suffered, or any danger or risk of injury to the defendant or

19  the defendant's family resulting from the defendant's assistance; and

20      E.    The timeliness of the defendant's assistance.

21      The defendant agrees that in the event the United States files a downward

22  departure motion based upon the defendant's substantial assistance, the United

23  States reserves the right to make a specific recommendation to the Court regarding

the extent of such a departure.  The defendant understands and agrees that the final decision as to how much of a departure, if any, is warranted rests solely with the Court.

The defendant agrees that if the United States determines that the defendant has not provided full and truthful cooperation, or has committed any federal, state or local crime between the date of this agreement and the defendant's sentencing, or has otherwise violated any provision of this agreement, then (a) the agreement and any of its obligations hereunder may be voided by the United States in its sole discretion, (b) the defendant may not withdraw the guilty plea, and (c) the defendant shall be subject to prosecution for all federal criminal offenses of which the United States has knowledge, including but not limited to, perjury and obstruction of justice.  Any such prosecution may be based upon any information provided by the defendant or leads derived therefrom.

## XIII.  THE DEFENDANT'S ACKNOWLEDGMENTS AND WAIVERS

A.  <u>Plea Agreement and Decision to Plead Guilty</u>.  The defendant acknowledges that:

1. She has read this Plea Agreement and understands its terms and conditions;

2. She has had adequate time to discuss this case, the evidence, and this Plea Agreement with her attorney;

3. She has discussed the terms of this Plea Agreement with her attorney;

4. The representations contained in this Plea Agreement are true

1    and correct, including the facts set forth in Section IV; and

2            5.    She was not under the influence of any alcohol, drug, or

3    medicine that would impair her ability to understand the Agreement when she

4    considered signing this Plea Agreement and when she signed it.

5            The defendant understands that she alone decides whether to plead guilty or

6    go to trial, and acknowledges that she has decided to enter her guilty plea knowing

7    of the charges brought against her, her possible defenses, and the benefits and

8    possible detriments of proceeding to trial.   The defendant also acknowledges that

9    she decided to plead guilty voluntarily and that no one coerced or threatened her to

10   enter into this Plea Agreement.

11           B.    Waiver of Appeal and Post-Conviction Proceedings.   The defendant

12   knowingly and expressly waives: (a) the right to appeal any sentence imposed

13   within or below the applicable Sentencing Guideline range as determined by the

14   Court; (b) the right to appeal the manner in which the Court determined that

15   sentence on the grounds set forth in 18 U.S.C. § 3742; and (c) the right to appeal

16   any other aspect of the conviction or sentence and any order of restitution or

17   forfeiture.

18           The defendant also knowingly and expressly waives all collateral challenges,

19   including any claims under 28 U.S.C. § 2255, to his conviction, sentence, and the

20   procedure by which the Court adjudicated guilt and imposed sentence, except non-

21   waivable claims of ineffective assistance of counsel.

22           The defendant reserves only the right to appeal any portion of the sentence

23   that is an upward departure from the Sentencing Guidelines range determined by

1    the Court.

2         The defendant acknowledges that the United States is not obligated or

3    required to preserve any evidence obtained in the investigation of this case.

4         C.    Removal/Deportation Consequences.  The defendant understands and

5    acknowledges that if she is not a United States citizen, then it is highly probable

6    that she will be permanently removed (deported) from the United States as a

7    consequence of pleading guilty under the terms of this Plea Agreement.   The

8    defendant has also been advised if her conviction is for an offense described in 8

9    U.S.C. § 1101(a)(43), she will be deported and removed from the United States and

10   will not be allowed to return to the United States at any time in the future.  The

11   defendant desires to plead guilty regardless of any immigration consequences that

12   may result from her guilty plea, even if the consequence is automatic removal from

13   the United States with no possibility of returning.   The defendant acknowledges

14   that she has specifically discussed these removal/deportation consequences with

15   her attorney.

16

17   / / /

18

19   / / /

20

21   / / /

22

23   / / /

17

08/27/2014  04:17   2535090191

## XIV.  ADDITIONAL ACKNOWLEDGMENTS

This Plea Agreement resulted from an arms-length negotiation in which both parties bargained for and received valuable benefits in exchange for valuable concessions.  It constitutes the entire agreement negotiated and agreed to by the parties.  No promises, agreements or conditions other than those set forth in this agreement have been made or implied by the defendant, the defendant's attorney, or the United States, and no additional promises, agreements or conditions shall have any force or effect unless set forth in writing and signed by all parties or confirmed on the record before the Court.

DANIEL G. BODGEN
United States Attorney

8/28/14
DATE

Steven W. Myhre
First Assistant United States Attorney
Daniel R. Schiess
Assistant United States Attorney

8/27/14
DATE

Michael R. Pandullo
Counsel for Defendant

8-27-14
DATE

Constance C. Fenton
Defendant

18